Jimmy **NEUSCHAFER**, Petitioner,

v.

Harol **WHITLEY, et al.**, Respondents.

No. CV–N–87–419–ECR.

United States District Court, D. Nevada.

Dec. 8, 1987.

N. Patrick Flanagan, Asst. Federal Public Defender, Reno, Nev., for petitioner.

Brian McKay, Atty. Gen. by David Sarnowski, Deputy Atty. Gen., Carson City, Nev., for respondents.

## ORDER

EDWARD C. REED, Jr., District Judge.

The petitioner, Jimmy Neuschafer, has brought this second petition for a writ of federal habeas corpus under 28 U.S.C. § 2254.[1] Initially, the petitioner had decided not to bring the second petition, and the American Civil Liberties Union sought permission to file the petition on his behalf as relator. The Court denied the ACLU's motion to intervene as relator, and declined to issue any stay of execution for the petitioner. Shortly before the scheduled execution, however, the petitioner decided to present his second petition to the Court. In view of the substantial issues presented by that petition, and in view of the short amount of time in which the Court had to consider those issues, the Court stayed the petitioner's imminent execution. This order was upheld by both the Ninth Circuit and the United States Supreme Court.

The respondents have moved to dismiss the 1987 petition on various grounds, including the abuse of writ doctrine. In view of the fact that this is a successive petition, the Court ordered a hearing to determine whether this second petition indeed constituted an abusive writ. *See Richmond v. Ricketts*, 774 F.2d 957, 961 (9th Cir.1985). After consideration of the pleadings on file and the argument and evidence presented at the hearing, it appears to the Court that this second petition is abusive, and that it should be dismissed on that basis.

## THE STATE PROCEEDINGS/1985 PETITION

The petitioner was convicted of the murder of fellow inmate Johnnie Johnson in April, 1983. The jury also imposed the sentence of death upon the petitioner. Several years lapsed before the state supreme court acted on the petitioner's direct appeal. On August 27, 1985, however, that court affirmed the petitioner's conviction and upheld the sentence of death. The petitioner then proceeded *in pro se* in the state courts, filing a petition for state post-conviction relief soon after the supreme court issued its mandate. The petition apparently argued that Neuschafer's fifth and sixth amendment rights had been violated as a result of his conviction. The state court judge who heard the petition dismissed it for lack of legal particularity, and also denied the petitioner's motions for appointment of counsel and for stay of execution.

By this time, the state public defender, Robert Bork, filed another petition before the same judge on October 28, 1985. The day after, the Attorney General's office moved to dismiss this petition. On the following day, the state court judge held a brief hearing, at which time he appointed the public defender to represent the petitioner, and dismissed the petition. That afternoon, Mr. Bork filed a notice of appeal to the state supreme court. The court dis-

---

1. As set forth fully below, the petitioner pursued his first petition for writ of habeas corpus before this Court in 1985. The Court will refer to this petition as the "1985 petition." This case therefore represents the petitioner's second attempt at federal habeas relief, and will be referred to as the "1987 petition."

missed the appeal and affirmed the judgment of the lower court, thereby clearing the way for the petitioner's execution, then scheduled for November 5, 1985.

## THE FEDERAL PROCEEDINGS/1985 PETITION

In view of the petitioner's imminent execution, the federal public defender, N. Patrick Flanagan, filed a petition for writ of habeas corpus and a motion for stay of execution with this Court. A hearing was held in this matter on November 4, 1985. At that time, the Court appointed Mr. Flanagan to represent the petitioner during the proceedings in this Court. The Court also noted that the petitioner had not yet had the opportunity to pursue any of the federal remedies to which he was entitled. In view of this, the Court stayed the petitioner's impending execution, and directed counsel to file an amended petition. The Court also cautioned the petitioner's counsel at that time that all possible grounds should be included in that amended petition, in view of the serious problems raised by subsequent petitions.

The petitioner filed the amended petition. The Court, by its order of March 12, 1986, denied the petition in its entirety. *Neuschafer v. Whitley*, 630 F.Supp. 897, 902 (D.Nev.1986). The petitioner then appealed that decision to the Ninth Circuit. On January 6, 1987, the circuit remanded the Court's order on the basis that an evidentiary hearing should have been held regarding the petitioner's *Miranda/Edwards* claim. *Neuschafer v. McKay*, 807 F.2d 839, 841 (9th Cir.1987). Pursuant to the circuit's order, this Court held an evidentiary hearing on February 18, 1987. At that time, the Court took evidence and testimony regarding whether the petitioner voluntarily initiated his second interview with law enforcement officials which resulted in his confession. The Court determined that the petitioner had indeed initiated the second contact, and that there was therefore no basis for the *Miranda/Edwards* claim. *Neuschafer v. Whitley*, 656 F.Supp. 891, 893 (D.Nev.1987). The Ninth Circuit affirmed this ruling. *Neuschafer v. Whitley*, 816 F.2d 1390, 1392 (9th Cir.1987). The

petitioner never sought review by the United States Supreme Court.

## THE 1987 PETITION

The petitioner then returned to the state courts, and filed another post-conviction relief petition. The state district judge heard this matter, as well as a motion for stay of execution on August 17, 1987. At that time, the petition was dismissed, and the motion for stay was denied. The notice of appeal was filed, and the state supreme court heard the matter on August 19, 1987. The supreme court then dismissed the appeal, and denied the motion for stay. After initially vacillating as to whether he would himself file a second federal habeas corpus petition, the petitioner then returned to this court with his second habeas petition and motion for stay of execution.

The 1987 petition alleges a variety of claims, none of which was asserted in the 1985 federal habeas petition. It appears to the Court, however, that the petitioner is barred from asserting these claims at this date because of his abuse of the writ.

## ABUSE OF THE WRIT

Rule 9(b) of the Rules Governing Cases under 28 U.S.C. § 2254 provides that

> [a] second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.

Rule 9(b), Rules Governing Cases under 28 U.S.C. § 2254. The purpose of this rule is to limit the ability of state prisoners to file successive habeas corpus petitions in the federal courts. *See Adv.Comm.Note to Rule 9(b)*, Rules Governing Cases under 28 U.S.C. § 2254.

The Ninth Circuit has had an opportunity to consider the circumstances which constitute an abuse of the writ. In *Richmond v. Ricketts*, 774 F.2d 957 (9th Cir.1985), the petitioner had brought two petitions for a federal writ of habeas corpus. In the first petition, he successfully challenged the Arizona statute under which he was sentenced

to death. The district court, in granting the petition, ordered that the petitioner be resentenced. At this second sentencing, the petitioner also received the death penalty under the revised statutory scheme. *Id.*, at 959.

The petitioner then filed a second habeas corpus petition, which challenged the constitutionality of his second sentencing. The district court denied the petition and the stay of execution on several grounds. The circuit court affirmed the portion of the district court's order which dismissed the petition for failure to exhaust, but vacated the portion of the order which denied the petition on the merits. The circuit then remanded with instructions to allow the petitioner to return to state court to exhaust his state remedies. Once he had exhausted those remedies, the petitioner returned to federal court with an eighteen count petition. The district court denied the petition, finding that the claims in the second petition could have been brought in the first petition, and therefore constituted an abuse of the writ. *Id.*

The Ninth Circuit reversed. It found that the district court had erred in holding that the new grounds alleged in the second petition should have been brought in the first petition. *Id.*, at 961. "Previously unadjudicated claims," the court noted, "must be decided on the merits unless the petitioner has made a conscious decision deliberately to withhold them, is pursuing 'needless piecemeal litigation' or has raised the claims only to 'vex, harass, or delay.'" *Id.*, *(citing Sanders v. United States,* 373 U.S. 1, 18, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (1963)).

In this case, the court found that nothing in the record indicated that the petitioner had withheld arguments purposefully in the hope of being granted two hearings instead of only one. *Id.* In addition, the court noted that the second petition had been filed in response to the resentencing gained as a result of the first petition. The court thus concluded that the petitioner could not be accused of having engaged in piecemeal litigation. *Id.* Finally, the court noted that the petitioner's purpose in filing the second petition was not to vex, harass or delay, inasmuch as he was challenging in good faith the statute under which he was resentenced to death. On this basis, the court concluded that the district court had wrongly dismissed these claims on abuse of the writ grounds.

In the present case, the petitioner may fairly be accused of abuse of the writ on the basis that he has deliberately withheld claims. As an initial matter, case law makes clear that the petitioner bears the burden of proof on this issue. In *Price v. Johnson,* 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948), the Court indicated that "[o]nce a particular abuse has been alleged, the prisoner has the burden of answering that allegation and of proving that he has not abused the writ." *Id.*, at 292, 68 S.Ct. at 1063; *see also* Adv.Comm.Note to Rule 9(b), Rules Governing Cases under 28 U.S. C. § 2254. The Advisory Committee Note and the cases also make clear that the petitioner must be allowed some sort of hearing to explain his alleged abuse, and this Court accorded with that directive. At that hearing, however, the petitioner failed to meet the burden of proof which the rules place on him.

Petitioner's attorney, N. Patrick Flanagan, chose not to call any witnesses or present any documentary evidence. Instead, petitioner's counsel chose to rely on the evidence and testimony presented in the voluminous records of the petitioner's first habeas corpus petition. In so doing, petitioner's counsel hoped to convince the Court that the first habeas petition was filed under extreme circumstances in an effort to avoid the petitioner's then imminent execution. *See supra,* pgs. 1419–1420. As noted above, the petitioner contends that he was himself unable to prepare a post-conviction brief, and that the state courts were unwilling to appoint counsel for him. The thrust of counsel's argument is that the petitioner was faced in November, 1985 with a Hobson's choice: either file a petition with only the unexhausted claims now and get a stay of execution from federal courts; or return to state courts to exhaust state remedies and

run the risk of not getting a stay there. Because of this difficult decision, the petitioner contends that he cannot be prevented from bringing these new claims (which were unexhausted at the time of the first petition), as he had to resort to the federal courts in order to stay his execution.

The petitioner's argument is unavailing for several reasons. First, and foremost, the petitioner has failed to prove that he or his counsel did not make a conscious decision to withhold deliberately these latter claims from the 1985 petition. Indeed, the argument which the petitioner propounds, if anything, indicates that he did know of these claims, but chose deliberately to withhold them for lack of exhaustion. The Court appreciates that petitioner and his counsel felt that they had to resort to the federal courts for a stay, but petitioner has cited the Court no authority for a "duress" exception to the abuse doctrine. On this basis, it appears that the petitioner has failed to bear his burden of proof.[2]

From the evidence which the respondents presented to the Court, it does appear that counsel and the petitioner made a decision to withhold these claims. Initially, the respondents' evidence proved that the present ineffective assistance of counsel claim was asserted by the petitioner himself in the state post-conviction brief. Although the state courts ultimately dismissed this claim as insufficient, it is evidence that the petitioner was aware of the existence of the claim at the time of the first federal habeas. Also, petitioner's counsel stated at the stay of execution hearing on November 4, 1985, that he was aware of the sixth amendment claims. In addition, the respondents showed that the issue surrounding the disqualification of

the trial judge had been fully argued in the state proceedings. Experienced, qualified counsel, such as Mr. Flanagan must be assumed to have read the trial record, and must be charged with that knowledge. Thus, it is fair to state that petitioner and counsel were aware of the disqualification issue as well.

Moreover, at the hearing on the stay of execution conducted by this Court on November 4, 1985, the petitioner and his counsel were cautioned to raise all possible grounds for relief in that petition so as to avoid the problems presented by the successive petitions. The Court further cautioned the petitioner and counsel that subsequent petitions would possibly be subject to dismissal for abuse of the writ. Reporter's Transcript, at pgs. 39–41. Although this evidence is not terribly strong on the issue of the petitioner's conscious decision to withhold issues, it is at least some evidence on this topic.

Finally, the Court notes that the petitioner refused to answer the respondents' questions at the recent abuse of writ hearing relating directly to his state of mind regarding the filing of these claims. The respondents' attorney, Mr. Sarnowski, called the petitioner as his first witness, but petitioner's counsel objected to his taking the stand on fifth amendment grounds. The Court determined that the fifth amendment objection was improperly asserted, as nothing which the petitioner would testify about in that proceeding could tend to incriminate him in a later criminal proceeding. The Court thus allowed Mr. Sarnowski to question the petitioner with respect to his state of mind regarding these claims. The petitioner, however, adamantly refused

---

**2.** The petitioner's argument also requires the court to assume that it would have been impossible for him to have attained a stay in the state courts. The Court has not been presented with any case law or evidence which would tend to indicate that it would have been impossible for the petitioner to have gained a stay. Whereas it is true that the state courts refused to grant a stay on the petition filed *in pro per*, the reason for that refusal was the legal insufficiency of the petition. Had the petitioner presented the state courts with a proper petition, a stay could well have been achieved in the state courts.

The petitioner's argument also overlooks the fact that he could have amended the first federal habeas petition to include these claims once they were exhausted in the state courts. The petitioner could have even gone so far as to dismiss the first petition voluntarily, without prejudice, thereby allowing him more time to exhaust state remedies on these claims. Once all were exhausted, the petitioner could then return to this court with all of his claims in a single petition. The claim that the petition had to be pursued as it was originally constituted is thus not factually accurate.

to answer any questions from the respondents, despite repeated warnings by the Court. Although the basis for his refusal to answer is not entirely clear, it appears that the petitioner was attempting to rely on the fifth amendment privilege which the Court had found without foundation. Mr. Sarnowski then moved for immediate sanctions in the form of dismissal of the present petition, which motion the Court denied. It does appear, however, that the petitioner's refusal to answer these questions may be used as evidence against him.

The Supreme Court has consistently recognized that silence in the face of an accusation is a relevant fact which is not barred from evidence by the Due Process Clause. *See Baxter v. Palmigiano,* 425 U.S. 308, 319, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976). The basis for this rule is that "[f]ailure to contest an assertion ... is considered evidence of acquiescence ... if it would have been natural under the circumstances to object to the assertion in question." *Id., (citing United States v. Hale,* 422 U.S. 171, 176, 95 S.Ct. 2133, 2136, 45 L.Ed.2d 99 (1975); *cf., Wehling v. Columbia Broadcasting System,* 611 F.2d 1026, 1027 (5th Cir.1980) (invocation of fifth amendment privilege subject to the drawing of an adverse inference in a civil case by the trier of facts. Later cases have imposed even more severe sanctions for failure to answer properly asked questions. *See Baker v. Limber,* 647 F.2d 912, 918 (9th Cir.1981) (order dismissing defendants' counterclaims upheld where defendants' assertion of fifth amendment privilege was in bad faith and without foundation). In view of the more severe sanctions which the Court could properly impose upon the petitioner for refusing to answer questions, drawing an adverse inference of fact is an acceptable sanction.

In this case, the refusal of the petitioner to answer the respondents' questions is most telling. Under the circumstances, it would have been natural for any individual to answer the questions propounded in the negative, so as to attempt to establish the fact that there was no conscious decision on his part to withhold these claims. In this case, however, the petitioner simply refused to answer these questions, which can and will be used as evidence that he did make such a decision to withhold these claims.

Although the evidence presented by the respondents is not overwhelming, it is sufficient for the Court to find an abuse of the writ. As noted above, petitioner has not presented the Court with *any* evidence on this issue. As he bears the burden of proof, the Court must find that he has failed to meet that burden, and that he did make a conscious decision to withhold these latter issues deliberately.

■ The petitioner nonetheless contends that, as a matter of law, it was impossible to pursue these claims in 1985, in that they were not exhausted in state court at that time. Because of the dictates of *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), the petitioner contends that he could not have filed the then unexhausted claims, for fear that this Court would then be required to dismiss the entire petition. He thus argues that his decision to withhold these claims cannot now bar him from presenting them at this time.

This exact problem was considered in the *Rose* case. In her opinion, Justice O'Connor noted that the ruling in that case made it tempting for a petitioner to dismiss the unexhausted portion of the petition, with the hope of returning with those deleted claims once exhausted had been pursued in the state courts. Such a petitioner proceeds at his own risk, the Justice cautioned, as Rule 9(b) indicates that he may well be found under such circumstances to have abused the writ. "Thus," concluded Justice O'Connor, "a prisoner who decides to proceed only with his exhausted claims and deliberately sets aside his unexhausted claims risks dismissal of subsequent federal petitions." *Id.* at 521, 102 S.Ct. at 1305.

Although this portion of Justice O'Connor's *Rose* opinion garnered only a plurality of votes, a number of other circuits and district courts have adopted the rule. *See Rudolph v. Blackburn,* 750 F.2d 302, 305 (5th Cir.1984) (sole fact that petitioner's claim for relief was not exhausted at time

of prior federal writ would not excuse failure to include that claim in the prior petition); *Jones v. Estelle*, 722 F.2d 159, 169 (5th Cir.1983) (petitioner who persists in the prosecution of federal writ while aware of additional but unexhausted claims faces the burden of disproving abuse of the writ; that the omitted claim was not exhausted at the time of the first petition is not sufficient to avoid the abuse doctrine); *Jones v. Hess*, 681 F.2d 688, 695 (10th Cir.1982) (petitioner who deletes unexhausted claim risks forfeiture of the future consideration of that claim as a successive petition); *Smith v. Atkins*, 678 F.2d 883, 884 (10th Cir.1982) (quoting from Justice O'Connor's plurality opinion in *Rose* ); *cf., Johnson v. Lynaugh*, 821 F.2d 224 (5th Cir.1987) (successive petition would be denied as an abusive writ where petitioner failed to assert in prior petition new grounds raised as basis for habeas relief); *Moore v. Blackburn*, 774 F.2d 97, 98 (5th Cir.1985) (claims must be included in prior petition if competent attorney should have been aware of them at the time of the prior petition); *Urdy v. McCotter*, 773 F.2d 652, 655 (5th Cir.1985) (petitioner may assert new claims in second petition so long as they are based upon facts or legal theories of which the petitioner had no knowledge at the time of the first petition); *Booker v. Wainwright*, 764 F.2d 1371, 1376 (11th Cir.1985) (dismissal for abuse of the writ may be avoided by showing that the petitioner did not realize that such facts would constitute basis for which federal habeas relief could be granted); *contra, Powell v. Spaulding*, 679 F.2d 163, 166 (9th Cir.1982) (petitioner would be able to refile unexhausted claims in a second petition if he chose to do so) (*dictum* ); *United States ex rel. Rivera v. Franzen*, 564 F.Supp. 723, 725 (N.D.Ill.1983) (subsequent filing of previously unexhausted claim does not constitute abuse of the writ); *Martin v. White*, 538 F.Supp. 326, 327 (W.D.Mo.1982) (rejecting the *Rose* plurality opinion).

The Ninth Circuit has yet to state its position on this issue affirmatively. In *Powell v. Spaulding, supra*, pg. 1424, the court did indicate that it might follow the courts which have rejected the *Rose* plurality. In that case, the petitioner had been convicted of murder in the Washington state courts. He then brought a petition for a federal writ of habeas corpus, alleging four grounds for relief. After the state filed its answer, the petitioner sought leave to add another claim to the petition. The federal magistrate found that the claim was unexhausted in the state courts, and recommended that the petitioner be denied leave to add it into the petition. The magistrate then recommended that all of the exhausted claims in the petition be denied on the merits. *Id.*, at 165.

The Ninth Circuit affirmed the magistrate's recommendation. It noted first that the Supreme Court in *Rose* had adopted the total exhaustion rule developed in the Ninth Circuit. *Id.* By virtue of this, the court stated further that district courts are required to dismiss petitions containing exhausted and unexhausted claims. *Id.* In this case, however, the unexhausted claim had never been part of the petition; the petitioner had merely sought leave to add it to the petition. Thus, the court found the magistrate had committed no error in considering the remainder of the petition, inasmuch as the unexhausted claim had never been part of the petition. *Id.*, at 166. In addition, the court added in a footnote, without deciding the issue, that the petitioner might not be barred by the abuse of the writ doctrine if he later sought to assert the unexhausted claim in a second habeas petition. *Id.*, n. 5. Thus, it could be argued that the circuit has rejected the *Rose* plurality, choosing instead to side with the minority opinion in that case.

This conclusion would be unwarranted, for several reasons. First, and foremost, the court's statement in *Powell* is *dictum.* According to the court's own statement in the relevant footnote, it was not deciding the question of whether the second petition would be abusive, in that "[a]ny question regarding Powell's abuse of the writ would [have] to be addressed directly if and when Powell files a second petition...." *Id.* The court thus reserved decision on the question of whether this conduct constitutes an abuse of the writ. *Powell* cannot

therefore be taken as authority in this matter. *See Webster v. Fall,* 266 U.S. 507, 511, 45 S.Ct. 148, 149, 69 L.Ed. 411 (1925); *Sethy v. Alameda County Water District,* 545 F.2d 1157, 1160 (9th Cir.1976); *Mead v. Retail Clerks Int'l Ass'n,* 523 F.2d 1371, 1374 (9th Cir.1975). In addition, the *Powell* court noted that part of the reason for its statement regarding subsequent petitions was the state's inconsistent position with respect to the exhaustion of the claim at issue. Because the state had apparently argued for exhaustion at one point, and then had reversed course and argued against exhaustion on appeal, the court was unsympathetic to the possible abuse argument by the state.

■ The court's suggestion in *Powell* regarding subsequent petitions is therefore not binding upon this Court. As noted above, the *Rose* plurality has much to recommend for itself. For if that rule is not the law, a habeas petitioner would be able to exhaust his state remedies on his available claims one by one, and file a fairly continuous stream of federal habeas corpus petitions. Such a result would make a mockery of the federal habeas system. It is important that a petitioner be able to present his claims to the federal courts, and this Court's order does not prevent that in any way. The Court simply states that where a habeas petitioner is aware at the time of the filing of the first federal habeas petition that he has other claims for relief, but fails to add those claims into the first petition, he is subject to abuse of the writ charges.

■ The petitioner can always avoid the abuse charge by showing that the latter claims were not reasonably available to him at the time of the first petition. He could argue, for example, that the legal basis for the subsequent claims had not been established at the time of the first petition, as subsequent case law established his claim for relief. *See Reed v. Ross,* 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984). In addition, he could also argue that the factual basis of the subsequent claim was unavailable to him at the time, owing to the discovery of facts after the filing of the

first petition. This list is not exclusive, but it is important to note that the simple fact that the petitioner has not exhausted his state court remedies on a claim does not excuse an abusive writ. The proper course of action for the petitioner in such a case is to dismiss the first federal habeas without prejudice, return to the state court, and exhaust all remedies. Once this is accomplished, the petitioner can then refile the federal habeas with all exhausted claims, without fear of abuse of the writ charges. As a matter of law, therefore, the fact that the present claims were unexhausted at the time of the first federal habeas petition does not constitute a defense against abuse of the writ charges.

In this case, the petitioner has abused the writ. The respondents have made a proper allegation of abuse, and the Court has held a hearing at which time the petitioner was afforded an opportunity to explain his alleged abuse. As noted above, the petitioner bore the burden of proof on the issue of his conscious decision to withhold claims, and he failed to meet that burden. The evidence which was presented to the Court tended to indicate that a conscious decision was made to withhold, for fear of dismissal under *Rose v. Lundy,* among other things. In addition, the petitioner's refusal to answer properly asked questions at the abuse hearing is also evidence that he did make a decision to withhold these claims deliberately. Finally, as noted above, the fact that these claims were unexhausted when the first writ was filed does not constitute an excuse for abuse purposes as a matter of law. The petitioner has failed to demonstrate that his withholding of these claims was anything but deliberate, and his petition is therefore abusive.

IT IS, THEREFORE, HEREBY ORDERED that the respondents' motion to dismiss the petition for writ of habeas corpus on abuse of the writ grounds is granted.

IT IS FURTHER ORDERED that the stay of execution entered in this matter by the Court shall remain in effect for thirty days from the date of this order, so that

the petitioner may seek review of this order in the Ninth Circuit Court of Appeals. If no appeal is pursued, the stay shall expire at the end of that thirty-day period.