110 F.3d 69
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Tony Manuel MADRID, Petitioner-Appellant,
v.
James UPCHURCH, Warden; Attorney General of the State of
Arizona; Terry Stewart, Director, Department of
Corrections, Respondents-Appellees.
 No. 96-16026.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 24, 1997.*
Decided March 26, 1997.
 
 Before: SNEED, FARRIS, and THOMAS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Arizona state prisoner Tony Manuel Madrid appeals the district court's denial of his habeas corpus petition. We have jurisdiction under 28 U.S.C. § 2253. We review the district court's denial of Madrid's petition de novo, Calderon v. Prunty, 59 F.3d 1005, 1008 (9th Cir.1995), and we affirm.
 
 I.
 
 3
 Madrid was tried for and convicted of the sale of heroin. Prior to trial, he moved to suppress the in-court identification testimony of Detectives Saul Ayala and Rudy Casillas, as well as testimony regarding a pre-trial photographic identification made by Detective Ayala.
 
 
 4
 The trial court held an evidentiary hearing, and suppressed evidence of Detective Ayala's out-of-court identification. However, the trial court admitted Detective Ayala's in-court identification testimony, finding that the impermissibly suggestive photographic identification would not taint his in-court identification. The court later clarified this ruling, explaining that Detective Ayala's in-court identification would be "based solely" on what he recalled from the time of the incident. The court also admitted the in-court identification testimony of Detective Casillas, despite the fact that he too had viewed a photograph of Madrid before trial. The Arizona Court of Appeals affirmed, and the Arizona Supreme Court denied review.
 
 
 5
 In his habeas petition, Madrid claimed, inter alia, that the admission of the detectives' in-court identifications violated his due process rights. The district court denied the petition, holding that Madrid failed to overcome the presumption of correctness statutorily afforded the state trial court's factual finding that "the in-court identifications were not tainted." In this appeal, Madrid challenges the admission of Detective Ayala's in-court identification testimony. He argues that the district court improperly applied the presumption of correctness, and that the admission of the Detective Ayala's in-court identification violated due process.
 
 II.
 
 6
 We need not decide whether the district court erred in applying section 2254(d)'s presumption of correctness to what is arguably a mixed question of law and fact--namely, whether Detective Ayala's identification of Madrid derived from a source independent of the impermissible pre-trial procedure. Affording this determination no deference, Madrid's claim still fails.
 
 
 7
 In-court identification testimony is admissible, despite an impermissibly suggestive pre-trial identification procedure, so long as the testimony is "nonetheless reliable" under the totality of the circumstances. United States v. Simoy, 998 F.2d 751, 752 (9th Cir.1993). We consider the following five factors in determining the reliability of such testimony: (1) the opportunity of the witness to view the suspect at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the suspect; (4) the level of certainty shown by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. United States v. Dring, 930 F.2d 687, 692-93 (9th Cir.1991) (citing Neil v. Biggers, 409 U.S. 188, 200-01 (1972)). A presumption of correctness applies to findings of historical fact made by the state courts, both trial and appellate. 28 U.S.C. § 2254(d); Nevius v. Sumner, 852 F.2d 463, 469 (9th Cir.1988). The presumption also applies to the state trial court's implicit determination that Detective Ayala's testimony was credible. See Knaubert v. Goldsmith, 791 F.2d 722, 727 (9th Cir.1986) (per curiam) (applying presumption of correctness to implicit credibility determination). Whether the facts as found constitute a due process violation is a mixed question of law and fact, which we review de novo. Sumner v. Mata, 455 U.S. 591, 597 n. 10 (1982); Ponce v. Cupp, 735 F.2d 333, 336 (9th Cir.1984).
 
 
 8
 All but the third factor favor a finding of reliability. Detective Ayala spent fifteen to twenty minutes with Madrid on the evening of the sale, viewing him from a distance of approximately three feet under street lights and the car's internal dome light. Detective Ayala was not a casual or passing observer, but rather a trained police officer on duty. He testified that he closely observed the suspect so as to later identify him. The photographic confrontation took place the following day, and at that time Detective Ayala positively identified the man in the picture as the man who facilitated the sale of narcotics the night before.
 
 
 9
 Counterbalancing these indicia of reliability is the rather general description of Madrid given by Detective Ayala before the suggestive photographic procedure. Detective Ayala's departmental report, written the night of the sale, does not mention several of Madrid's notable characteristics, such as two tattoos Madrid bears on his arms, a small tear-drop tattoo Madrid wears on his face, or Madrid's crooked and blackened teeth. Further, Madrid alleges that the report misstates the color of his eyes. But an imperfect police report, even one that fails to mention or mischaracterizes prominent characteristics of the suspect, is not fatal to a finding of reliability. See Dring, 930 F.2d at 693 (finding identification testimony reliable despite officer's failure to mention suspect's beard in police report). Given the other indicia of reliability, we cannot say that the imperfect police report renders Detective Ayala's testimony unreliable.
 
 
 10
 Madrid also contends that Detective Ayala's testimony was unreliable because Ayala again viewed Madrid's photograph on two subsequent occasions, including once the morning of his testimony. While we certainly do not condone such police conduct, "the deterrence of such conduct is not the primary purpose behind judicial review of tainted identification testimony." United States v. Givens, 767 F.2d 574, 581 (9th Cir.1985) (quoting Green v. Loggins, 614 F.2d 219, 222 (9th Cir.1980)). Rather, "reliability is the linchpin in determining the admissibility of identification testimony." Manson v. Braithwaite, 432 U.S. 98, 114 (1977). Given Detective Ayala's good opportunity to view Madrid the night in question, his high level of attention, the brief interval between the crime and the initial identification, and Detective Ayala's positive identification at that time, we cannot say that his in-court identification was rendered unreliable by his pre-trial viewing of Madrid's photograph.
 
 
 11
 Under the totality of the circumstances, Detective Ayala's in-court identification testimony was reliable. Admission of that testimony did not violate Madrid's due process rights.
 
 
 12
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3